NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOY SYSTEMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. No. 07-3579 (GEB) |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| ADT SECURITY SERVICES, INC., | : | |
| | : | |
| Defendants. | : | |

**BROWN, Chief Judge**

  This matter comes before the Court upon the motion of ADT Security Systems Inc., ("Defendant") to dismiss Joy Systems' ("Plaintiff") complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below the Court will grant Defendant's motion.

**I. BACKGROUND**

  Plaintiff alleges that on October 31, 2003, it entered into a contract with Defendant in which Defendant agreed to install a security system at Plaintiff's warehouse, located in Miami, Florida. (Plaint. Opp'n. at 2.) Plaintiff further states that Defendant "induced [Plaintiff] to enter into the agreement by representing that [it] would provide central station signal and notification service and 24-hour monitoring." (*Id.*) Plaintiff maintains that said representations were reflected in a contract as well as "in a document entitled ADT Security Services Certificate of Security System Installation." (*Id.*)

Plaintiff alleges that on the evening of June 21, 2006, its warehouse was burglarized. According to Plaintiff, when it notified Defendant the next day, it discovered that its alarm system "had not been connected to central station [and] there had been no record of [its] alarm registering over the prior six months." (*Id.* at 3.) Plaintiff also contends that Defendant failed to provide it with the 24-hour monitoring, that Defendant had represented it would provide.

In the first count of Plaintiff's complaint, Plaintiff alleges that in soliciting business from Plaintiff, Defendant violated New Jersey's Consumer Fraud Act, N.J.S.A 56:8-2 ("CFA"). In Count II, Plaintiff alleges that Defendant breached its contract by failing to provide security services. In Count III, Plaintiff alleges that Defendant was unjustly enriched by receiving payments from Plaintiff without providing the contracted services. (Docket 07-3579 Entry No. 1, Ex. A ("Compl.").)

## II.  DISCUSSION

### A.  Standard for a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (*citing Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. *Id.* at 1965-66 (abrogating Conley's standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief"). In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. *Id.* at 1965. The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied 510 U.S. 1042 (U.S. Jan. 10, 1994) (No. 93-661).

  B.  Application

  At the heart of this dispute is the validity and reach of an exculpatory clause appearing in the terms and conditions of the Agreement between the parties. The exculpatory clause provides:

> IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION. ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS, THAT THE SYSTEM OR SERVICES SUPPLIED WILL AVERT OR PREVENT OCCURRENCES OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICE IS DESIGNED TO DETECT. IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO DETERMINE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM

>FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THE PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES.

(Docket 07-3579 Entry No. 6, Ex. A.)

Defendant argues that the above exculpatory clause in the agreement between the parties mandates the dismissal of Plaintiff's claim. Defendant asserts that risk allocation clauses such as the one entered into between the parties in this case are routinely upheld because the nature of the industry renders alarm companies a "constant target for insurance carriers and commercial parties seeking consequential damages for losses an alarm company *did not cause*, such as the burglary in this case." ( Def. Br. at 4) (emphasis in original). Defendant adds that, as is customary for alarm companies, Defendant determined pricing for Plaintiff for based on the cost of the service it was providing, and not upon the value of the property being protected. According to Defendant, courts widely recognize that alarm companies would risk insolvency, if they were disabled from allocating risk through contract. (*Id.*)

4

Defendant argues that the express terms of the exculpatory clause above exempt it "from liability from damages to persons or property as a result of [Defendant's] performance or nonperformance or any contractual or common law duty [and] acknowledges that [it] is not an insurer." (*Id.* at 6-7.) Defendant adds that the exculpatory clause is valid because it has no adverse effect on the public's interest, Defendant was under no public duty to perform, and both parties to the contract maintained equal bargaining power. (*Id.* at 8-10.)

Defendant also argues that the CFA claim must be dismissed because it rests on nothing more than a breach of contract claim, and therefore falls short of constituting fraud under the statute. (*Id.* at 10-13.) Finally Defendant urges dismissal of Plaintiff's unjust enrichment claim, arguing that a claim for unjust enrichment cannot stand when as here, there is an adequate legal remedy through a valid contract. (*Id.* at 13-14.)

Plaintiff opposes Defendant's motion, arguing that the exculpatory clause in the Agreement does not protect Defendant with regard to Plaintiff's claims of willful, malicious , and fraudulent conduct. (Plaint. Opp'n at 5.) Plaintiff also argues that the exculpatory clause does not protect Defendant from "benefit-of-the-bargain contract damages, i.e., the difference in value between the system as installed and as represented." Defendant seems to assert that the contract's limitation on damages stemming from "a failure of service or equipment" does not apply here because Defendant never provided any service, and therefore it was not possible for the service to fail. (*Id.* at 6.) Defendant argues that it should be given the opportunity to obtain discovery so it can explore why the alarm system was not connected to central station and the twenty-four-hour monitoring was not in place. (*Id.*)

Plaintiff also argues that its CFA claim should stand because it is alleging that Defendant

5

made affirmative misrepresentations to Plaintiff regarding the sale of "merchandise." (*Id.* at 8.) According to Plaintiff, Defendant committed an affirmative misrepresentation by: (1) inducing Plaintiff to purchase its services in representing that it would provide central station signal and notification service as well as 24-hour monitoring; (2) providing Plaintiff with a certificate confirming this understanding; and (3) then failing to install those features. (*Id.* at 9.)

The parties seem to be unclear as to whether New Jersey or Florida Law applies to the contract claim in this case. However, the law of both states recognizes a valid exculpatory clause. *See Synnex Corp. v. ADT Sec. Services, Inc.*, 394 N.J. Super. 577; *Ace Formal Wear v. Baker Protective Serv.*, 416 So.2d 8. Because Florida and New Jersey law are in harmony on this issue, the Court need not rule upon which state law governs. *See Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). In fact Plaintiff does not dispute the validity of the exculpatory clause at issue in this case. The exculpatory clause in the contract provides that "the customer agrees to look exclusively to customer's insurer to recover for injuries or damage, in the event of any loss or injury and releases and waives all right of recovery against [Defendant]." The exculpatory clause further provides that Defendant "shall be exempt from liability for loss, damage, or injury due directly or indirectly to occurrences, or consequences therefrom which the service or system is designed to detect or avert." The Court finds that the relief Plaintiff seeks for Defendant's alleged failure to perform the services agreed to in the contract, is barred by the clear language of the exculpatory clause in the agreement. As such, Plaintiff's breach of contract claim cannot stand.[1]

---

[1] This Court does not rule upon whether Defendant may be liable to Plaintiff for "a sum equal to 10% of the annual service charge or $1,000" pursuant to paragraph E of the agreement because said amount does not meet the required minimum amount in controversy. *See* 28 USCS

Plaintiff's CFA claim also fails as a matter of law. While plaintiff pleads legal conclusions in its complaint in support of its CFA claim – specifically that "Defendant[] directed and employed an unconscionable commercial practice, deception, false promise, omission and/or misrepresentation," the underlying facts alleged in Plaintiff's complaint to support this claim actually sound in breach of contract. (Compl. at ¶ 7.) Specifically, Plaintiff alleges that "Defendant failed to properly install the alarm system it sold to Plaintiff on Plaintiff's Florida warehouse, such that the police and/or central offices of ADT were not contracted on the date of the burglary of Plaintiff's Florida warehouse." (*Id.*) Thus Plaintiff does not allege any facts to support its claim that "Defendant[] directed and employed an unconscionable commercial practice, deception, false promise, omission and/or misrepresentation." (*See* Compl. at ¶ 7.) In essence, Plaintiff again alleges that Defendant failed to perform on the contract. It is well settled that something more than a breach of contract is required to make up a valid claim under the CFA. *See Gennari v. Weichert Co. Realtors*, 148 N.J. 582 (N.J. 1997); *Barry by Ross v. New Jersey State Highway Authority*, 245 N.J. Super. 302, 309 (Ch. Div. 1990). As such, Plaintiff's CFA claim cannot stand.

Finally, Plaintiff does not dispute Defendant's argument that Plaintiff's unjust enrichment claim should be dismissed. The Court agrees with Defendant that Plaintiff's claim with regard to unjust enrichment fails as a matter of law. Unjust enrichment is an equitable remedy only available when there exists no contract to otherwise provide compensation. *Caputo v. Nice-Pak Products*, Inc., 300 N.J. Super. 498, 506 (App. Div. 1997). Because a valid contract exists

---

§ 1332(a).

between the parties, Plaintiff's unjust enrichment claim cannot stand.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss Plaintiff's claim.  An appropriate form of Order accompanies this Opinion.


Dated: March 6, 2008

                                                                s/Garrett E. Brown, Jr.
                                            GARRETT E. BROWN, JR., U.S.D.J.